1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6

7    KAREN L. COLEMAN,                     Case No.  12-cv-02668-JST
            Plaintiff,
8
9        v.                               **ORDER GRANTING DEFENDANTS'
                                          MOTIONS FOR SUMMARY
10   KAISER PERMANENTE, et al.,            JUDGMENT**
            Defendants.                    Re: ECF Nos. 73, 74, 75
11

12          This case arises from the termination of Plaintiff's employment with Defendant, the

13   Permanente Medical Group, Inc. ("TPMG").  Defendant TPMG and individual Defendants Terri

14   Pillow-Noriega ("Pillow-Noriega") and Lowry Mitchell ("Mitchell") now move for summary

15   judgment with respect to each of Plaintiff's claims asserted against them in her Amended

16   Complaint ("AC").  For the reasons set forth below, the Court will grant Defendant TPMG's

17   motion for summary judgment with regard to Plaintiff's breach of contract claims arising out of a

18   collective bargaining agreement.  The Court will remand the remaining claims for resolution in

19   state court.

20   **I.       BACKGROUND**

21          Karen Coleman ("Plaintiff" or "Ms. Coleman"), an African-American woman with over

22   twenty years of nursing experience, transferred to the new Kaiser Permanente Medical Center in

23   Antioch, California (the "Antioch facility") in late 2007 after having worked as a Staff Nurse in

24   the Emergency Department (the "ED") at Kaiser's Oakland facility.  Coleman Decl., ECF No. 99

25   ¶¶ 2, 8.  Beginning in 2005, and continuing throughout the duration of her employment at Kaiser's

26   Antioch facility, Coleman was represented by her union, the California Nurses Association

27   ("CNA").  Coleman Dep., ECF No. 78-1 at 44:4–6.  Accordingly, the conditions of her

28   employment with Kaiser were governed by a collective bargaining agreement ("CBA").  Id. at

41:20–42:10; Pillow-Noriega Decl., ECF No. 77 ¶ 4.

Soon after her employment at the Antioch facility began, several hospital staff began to question Coleman's competency as an ED nurse.  In December 2007, Emergency Services Director Terri Pillow-Noriega decided to enroll Coleman in a five-day reorientation program, during which time she would work alongside another staff nurse, known as a preceptor, who would be available to answer questions and would oversee Coleman's work.  Pillow-Noriega Decl. ¶ 8.  On January 10, 2008, Coleman was placed on another five-day reorientation program. Id. ¶ 11.  Immediately after this second reorientation period, Coleman took a personal leave of absence from the Emergency Department.  Coleman Dep. at 269:9–11, 271:9–23.  On April 29, 2008, upon her return from leave, Coleman and her union representative met with Pillow-Noriega to discuss the results of her second reorientation.  Pillow-Noriega Decl. ¶ 15.  Following the meeting, Coleman again took a personal leave of absence, later explaining that it was prompted by stress from the "hostile work environment" at the Antioch facility.  Coleman Dep. at 294:24–295:5.  After her return, Coleman participated in a third reorientation period, with preceptors of her choice.  Pillow-Noriega Decl. ¶ 16; Coleman Dep. at 296:6–12.  Coleman again took a leave of absence at the conclusion of the reorientation period.  Pillow-Noriega Decl. ¶ 19; Coleman Dep. at 301:17–304:22.

On November 7, 2008, Pillow-Noriega emailed Ms. Coleman, informing her that she would be able to return to work on November 17, 2008, but due to the persistent performance concerns uncovered during her three reorientations, Pillow-Noriega had decided to enroll her in a formal plan of performance correction, called a Performance Improvement Plan ("PIP").  Pillow-Noriega Decl. ¶ 20; Pillow-Noriega Decl., Ex. F, ECF No. 77–1.  Coleman did not return to work until February 2009 because of a stress-induced medical leave of absence.  Coleman Decl. ¶¶ 32, 41.

After returning to work, pursuant to the terms of her PIP, Coleman worked shifts with two preceptors, Staff Nurses Michelle Johnson and Katherine Blaisdell.  Pillow-Noriega Decl. ¶ 25.  After working several shifts alongside Coleman, both preceptors reported to Pillow-Noriega several nursing errors Ms. Coleman allegedly committed.  Id.  Pillow-Noriega discussed the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   incidents with Emergency Services Director Lowry Mitchell.  Pillow-Noriega Decl. ¶ 32.

2   Following the meeting, Pillow-Noriega decided to place Coleman on paid investigatory leave to

3   allow for the incidents to be further investigated.  Id.

4         Pillow-Noriega and her supervisor, Lindsay Dicks, terminated Ms. Coleman's employment

5   with TPMG on July 29, 2009.  Pillow-Noriega Decl. ¶¶ 39–40; Coleman Decl. ¶ 51.  TPMG also

6   reported Coleman's termination and errors to the California Board of Registered Nursing.

7   Mitchell Depo., ECF No. 78–6 at 197:20–198:4.

8         The day after Coleman's termination, the CNA filed a grievance on her behalf, claiming

9   TPMG lacked just cause for her termination in violation of the CBA.  Pillow-Noriega Decl. ¶ 40;

10  Ex. T.  The CBA outlined a four-step grievance procedure in which the CNA and TPMG were

11  required to participate.  Pooley Decl., Ex. I, ECF No. 77–1 at ¶¶ 3900–4011.  On May 10, 2010,

12  TPMG denied Coleman's discharge grievance at Step II.  Pillow-Noriega Decl. ¶ 40.  After the

13  CNA appealed the Step II denial, on November 9, 2010, TPMG denied the appeal at Step III.  Id.;

14  Pooley Decl., Ex. U, ECF No. 77–2 at 3.  Following the Step III denial, the union did not advance

15  Coleman's grievance to arbitration, the fourth and final step of the grievance resolution process.

16  Pillow-Noriega Decl. ¶ 40; Coleman Dep. at 50:2–51:6.  Coleman did not ask the CNA to pursue

17  arbitration and, in her deposition, indicated that she was satisfied with the way CNA handled her

18  discharge grievance.  Coleman Dep. at 50:5–21.

19        In addition to her CNA grievance, on December 23, 2009, Coleman filed a discrimination

20  charge with the Equal Employment Opportunity Commission ("EEOC") and the California

21  Department of Fair Employment and Housing ("DFEH") alleging race discrimination and

22  retaliation.  Pooley Decl., Ex. B, Coleman Deposition Exhibits, Ex. 21, ECF No. 78–5.  On July

23  28, 2011, nearly two years after TPMG terminated her employment, Coleman filed an amended

24  charge of discrimination and added allegations of disability discrimination to her original

25  complaint.  Id. at Ex. 27.  On August 11, 2011, the EEOC issued Coleman a right-to-sue letter on

26  her administrative charges.  Id. at Ex. 29.  Coleman filed this action on November 10, 2011, in

27  state court.  In her initial complaint, Plaintiff alleged the following causes of action: (1–6)

28  violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§

3

12940(a), (h), (k), (j)(1), (m), and (n) for discrimination and harassment based on race, age, and disability, failure to investigate and prevent discrimination, and retaliation for complaining about the discrimination and harassment; (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; (9) wrongful termination in violation of public policy; (10) defamation; (11) intentional infliction of emotional distress; and (12) engaging in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.  See ECF No. 1.  On May 24, 2012, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, claiming Plaintiff's seventh and eighth causes of action present federal questions under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

## II.   EVIDENTIARY OBJECTIONS

### A.   Plaintiff's Evidentiary Objections

Plaintiff has filed seven separate evidentiary objections to numerous statements contained within seven declarations offered in support of Defendants' Motions for Summary Judgment.  See ECF Nos. 94, 97, 98, 100–03.  Defendants move to strike each evidentiary objection on the ground that the objections violate Civil Local Rule 7–3, which requires parties to file evidentiary objections "within the brief or memorandum" filed in opposition to a motion.  See ECF No. 107; Civil L. R. 7–3(a).  Because Plaintiff filed the objections at issue apart from her opposition briefs in violation of Civil Local Rule 7–3, Defendants' motion to strike is GRANTED.  See Beauperthuy v. 24 Hour Fitness USA, Inc., 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011).  The Court will not consider these objections.

### B.   Defendants' Evidentiary Objections

In their Replies, Defendants Pillow-Noriega and TPMG raise various objections to evidence Plaintiff presented in her opposition papers.  ECF Nos. 114, 116.  The Court OVERRULES these objections as moot, because even assuming the evidence were to be considered, the Court's conclusion with regard to Plaintiff's breach of CBA claims would be the same.[1]

---

[1] Defendants also request judicial notice of various state court decisions involving Defendant Pillow-Noriega.  ECF No. 120.  Because those state court decisions have no bearing on the

### III.    GOVERNING STANDARDS

#### A.    Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court

resolution of the current action, the Court DENIES Defendants' request.

1    "to scour the record in search of a genuine issue of triable fact." Id.  "A mere scintilla of evidence

2    will not be sufficient to defeat a properly supported motion for summary judgment; rather, the

3    nonmoving party must introduce some significant probative evidence tending to support the

4    complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and

5    internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving

6    party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

7    **B.      LMRA § 301 Preemption of State Claims**

8    Pursuant to Section 301(a) of the LMRA, district courts have original jurisdiction over

9    actions alleging violations of a collective bargaining agreement (CBA).  29 U.S.C. § 185(a).

10   When state law claims require a court to interpret the terms of a CBA, a court must treat those

11   claims as preempted by the exclusive federal jurisdiction provided by the LMRA.  See Allis–

12   Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1984).  "The pre-emptive force of § 301 is so

13   powerful as to displace entirely any state cause of action 'for violation of contracts between an

14   employer and a labor organization.'" Franchise Tax Bd. of Cal. v. Construction Laborers

15   Vacation Trust for So. Cal., 463 U.S. 1, 23 (1983) (quoting 29 U.S.C. § 185(a)).  That a plaintiff

16   has not framed his or her state-law claim so that it explicitly refers to a CBA will not defeat

17   federal preemption.  International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987).

18   If a plaintiff's claims are founded on rights created by a CBA or are "substantially dependent on

19   analysis of a CBA" and can only be resolved by looking to the terms of the CBA, they are

20   preempted.  Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987).

21   However, not every claim brought by an employee governed by a CBA is preempted by

22   § 301.  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988).  State-law tort claims

23   are not preempted when they allege a breach of duties and rights that exist independently of a

24   CBA and the factual inquiry necessary to resolve the claims does not "turn on the meaning of any

25   provision of [the CBA]." Id.  To determine if a plaintiff's claims are preempted by § 301, a court

26   must determine "whether the claims exist independent of any rights established by the contract" or

27   whether they are "inextricably intertwined" with consideration of the terms of the CBA.  Allis–

28   Chalmers, 471 U.S. at 213.

United States District Court
Northern District of California

6

## IV.    DISCUSSION

### A.    Claims Preempted by § 301

Defendants assert that jurisdiction is proper in this Court because Plaintiff's seventh and eighth causes of action — breach of contract and breach of the implied covenant of good faith and fair dealing — implicate provisions of the CBA that governs Plaintiff's employment with TPMG. Notice of Removal, ECF No. 1 ¶ 9.  Consequently, because all claims based on collective bargaining agreements fall under the exclusive jurisdiction of the LMRA, Defendants argue that Plaintiff's seventh and eighth causes of action must be re-characterized as claims under § 301 of the LMRA for which federal courts have original jurisdiction.  Id. ¶¶ 9–11.  Plaintiff contends that her breach of contract claims are not preempted and maintains that Defendants have failed to articulate which provisions of the CBA the Court must interpret in order to resolve her claims. ECF No. 104 at 27.

#### 1.    Breach of CBA Claims

In her seventh cause of action, Plaintiff alleges that TPMG breached her employment contract, in part, by terminating her without just cause, failing to provide her with opportunity to respond to allegations of workplace violations, and failing to subject her to progressive discipline. Am. Compl. ¶¶ 72–76.  Additionally, she alleges that TPMG breached the implied covenant of good faith and fair dealing by allegedly violating the substantive provisions of the CBA implicated in her breach of contract claim.  Id.

As a member of the CNA, Plaintiff concedes that her employment with TPMG was governed by a CBA.  See Coleman Depo. at 44:4–6, 41:20–42:10; Pillow-Noriega Decl. ¶ 4. Section 4021 of the CBA grants the TPMG the right to discharge or levy disciplinary action for "just cause."  Pooley Decl., Ex. I, at ¶ 4021.  Article XL of the CBA provides for and describes an employee grievance procedure, which is "the sole and exclusive remedy for any and all disputes or rights arising from or relating to" the CBA.  Id. §§ 4000–01.  However, after a searching examination of the excerpts of the CBA provided by the parties, the Court is unable to locate, and Plaintiff has not identified, any provision of the CBA that specifically vests an employee with the right to respond to negative accusations or receive "progressive discipline."  Because Plaintiff has

7

United States District Court
Northern District of California

1    alleged that Defendants violated the CBA by failing to afford to her the ability to respond to

2    accusations against her and failing to subject her to progressive discipline, the Court must treat

3    these alleged rights as implied by the terms of the CBA.

4            Regardless of whether these rights are explicitly provided by the CBA, Plaintiffs seventh

5    and eighth causes of action implicate the "just cause" provision of the CBA.  Plaintiff essentially

6    claims that TPMG lacked "just cause" when they terminated her employment *because* they did not

7    allow her the right to respond to the complaints against her and did not subject her to progressive

8    discipline.  This requires the Court to determine whether TPMG indeed had "just cause" to

9    terminate Plaintiff's employment even though it had not afforded her the opportunity to respond to

10   complaints and failed to subject her to progressive discipline.

11           Because the issues raised in Plaintiff's contract claims arise under the just cause provision

12   of the CBA, the Court is required to analyze and interpret that provision of the CBA.

13   Accordingly, Plaintiff's seventh and eighth causes of action are preempted by the LMRA.

14   However, because state law claims completely preempted by § 301 can be re-characterized as

15   federal claims brought under the LMRA, see  Young v. Anthony's Fish Grottos, Inc., 830 F.2d

16   993, 998–99 (9th Cir. 1987), the Court will treat Plaintiff's breach of CBA claims as § 301 claims.

17                   **2.      Failure to Exhaust CBA Grievance Procedure**

18           Defendants argue that they are entitled to summary judgment with regard to the re-

19   characterized § 301 claim because Plaintiff failed to exhaust the mandatory grievance procedure

20   set forth in the CBA before filing this action in state court.  TPMG MSJ, ECF No. 73 at 22.

21           In order to bring a suit seeking to vindicate personal rights under a CBA, an employee

22   must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the

23   agreement.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 986–87 (9th Cir. 2007) (citing

24   United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37 (1987).  Here, the

25   governing CBA set forth a mandatory, four-step grievance procedure to which the CNA

26   employees and TPMG were bound.  See Cooley Decl., Ex. I, at § 4001 (CBA provides that "the

27   grievance/arbitration procedure is the sole and exclusive remedy for any and all disputes or rights

28   arising from or relating to this Agreement").  Furthermore, it is undisputed that Plaintiff's

1    discharge grievance failed to reach arbitration, the final step of the grievance procedure outlined

2    by the CBA.  Coleman Depo. at 50:2–10; Pillow-Noriega Decl. ¶ 40.  The union pursued

3    Plaintiff's complaint up to Step III of the grievance procedure, but after TPMG denied the

4    grievance at Step III, the union did not appeal the discharge grievance to arbitration or take any

5    further action on Plaintiff's behalf.  Id.  After her Step III grievance was denied, Plaintiff did not

6    ask the CNA to proceed to arbitration.  Id. at 50:5–10.  Because Plaintiff did not attempt to

7    advance her discharge grievance to arbitration, she failed to exhaust the contractual grievance

8    procedure mandated by the CBA.

9           However, an exception to this exhaustion requirement exists where an employee shows

10   that "the union representing the employee in the grievance/arbitration procedure [has acted] in

11   such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair

12   representation."  DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164 (1983).  In this

13   situation, an employee may bring a suit against his or her employer without having exhausted the

14   grievance or arbitration procedure required by the CBA.  Id.  However, even in an action brought

15   solely against an employer, the employee bears the burden of proving that the employer breached

16   the terms of the CBA *and* that the labor union breached its duty of fair representation.

17   Soremekun, 509 F.3d at 987 (citing DelCostello, 462 U.S. at 165) (emphasis added).  Where an

18   employee is required to show a union's breach of its duty of fair representation, even in an action

19   brought solely against an employer, the claim is not a straightforward breach of contract suit under

20   § 301, but rather "a hybrid § 301/fair representation claim amounting to a direct challenge to the

21   private settlement of disputes under [the CBA]."  DelCostello, 462 U.S. at 165 (quotation

22   omitted).

23          Here, the CNA represented Plaintiff's discharge grievance throughout the grievance

24   procedure with TPMG.  See Coleman Depo. at 50:2–25.  However, Plaintiff has not alleged any

25   breach of duty on behalf of her union.  To the contrary, Plaintiff testified that she was satisfied

26   with the CNA's handling of her grievance and that she did not believe CNA's failure to pursue

27   arbitration was "arbitrary, discriminatory or in bad faith."  Coleman Depo. at 50:15–51:6.  Even

28   though she understood that her union would not be advancing her grievance to arbitration after

United States District Court
Northern District of California

United States District Court
Northern District of California

1    TPMG denied it at Step III, Plaintiff decided to "just . . . [not] deal with it anymore [and] let it

2    go." Id. at 51:18–22.  Accordingly, Coleman's complaint contains no allegation that her union

3    breached its duty of fair representation throughout its handling of her discharge grievance.

4         Because Plaintiff failed to exhaust her contractual remedies under the CBA's grievance

5    procedure, and Plaintiff has not alleged any breach of the duty of fair representation on behalf of

6    her union, Defendants are entitled to summary judgment with regard to Plaintiff's § 301 claims for

7    breach of contract and breach of the implied duty of good faith and fair dealing.[2]

8         **B.    Remaining State Law Claims**

9         Each of Plaintiff's remaining claims against Defendants TPMG, Pillow-Noriega, and

10   Mitchell are rooted in California state law.  A district court may decline to exercise supplemental

11   jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. §

12   1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the

13   balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

14   convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

15   remaining state-law claims."  Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010)

16   (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Because the Court will

17   grant summary judgment in favor of TPMG with respect to both causes of action implicating

18   federal law, the Court declines to assert supplemental jurisdiction over Plaintiff's remaining state

19   _____

20   [2] Even if Plaintiff had properly alleged the CNA's breach of the duty of fair representation in her
     Amended Complaint, and had succeeded in raising a triable issue of fact regarding that claim,
21   her § 301 claims would be barred by the statute of limitations.  Hybrid § 301/fair representation claims
     are subject to the six-month statute of limitations provided by Section 10(b) of the National Labor
22   Relations Act ("NLRA"), 29 U.S.C. § 160(b).  See DelCostello, 462 U.S. at 169–70.
23
     The statute of limitations for claims brought under § 10(b) of the NLRA begins to run when the
24   plaintiff knew or should have known of the alleged breach of the duty of fair representation.
     Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986).  Plaintiff's deposition transcript
25   shows that her claim accrued on November 9, 2010, the day the TPMG informed Plaintiff's union
     representative that it had denied her discharge grievance at Step III.  Pillow-Noriega Decl., Ex. U.
26   In her deposition, Plaintiff indicated that she understood that the CNA would not advance her
     discharge grievance to arbitration "[w]hen [TPMG] denied . . . the Step III."  Coleman Dep. at
27   51:1–6.  Accordingly, Plaintiff's hybrid §301/fair representation claims are untimely because she
28   first filed this action on November 10, 2011, outside the six-month limitations period.

claims, and will remand this action to state court.  See City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th Cir. 2010).

**V.      CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant TMPG's Motion for Summary Judgment with regard to Plaintiff's seventh and eighth causes of action.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  This action is hereby REMANDED to Alameda Superior Court for further proceedings.

**IT IS SO ORDERED.**

Dated: June 25, 2014

_____
JON S. TIGAR
United States District Judge